NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
:
TESSA GRAHAM, :
:
                Plaintiff, :    Civil Action No. 10-1268 (JAP)
    v. :
: **OPINION**
DAVID VANDEN HUEVEL, :
CHRISTINA STEFFNER, BRYAN :
PURZAK, JOANNE CALABRO, :
ROBERT GRATZ, HACKETTSTOWN :
PUBLIC SCHOOL DISTRICT, JOHN :
DOES and ABC FICTICIOUS ENTITIES, :
:
                Defendants. :
_____ :

PISANO, District Judge.

      Presently before the Court is a motion to dismiss for failure to state a claim filed by Defendants Christina Steffner ("Steffner"), Bryan Purzak ("Purzak"), Joanne Calabro ("Calabro"), and Robert Gratz ("Gratz") (collectively, the "Administrators") and Defendant Hackettstown Public School District (the "District"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Tessa Graham opposes the motion. For the reasons that follow, the Court finds that Plaintiff fails to state a claim under all Counts alleged against the District and the Administrators, and thus the motion to dismiss will be granted.

**I.    Background**

      On March 10, 2010, Plaintiff commenced this action against the District, former District teacher David Vanden Huevel ("Vanden Huevel"), former District Principals Steffner and Purzak, former District Superintendent Calabro, current District Superintendent Gratz, and John

Does and ABC fictitious entities. In her Complaint, Plaintiff alleges that when she began attending Hackettstown Public High School in 2004 at the age of 14, Vanden Huevel, then a 45-year-old tenured art teacher at the High School, sought a relationship with Plaintiff that was beyond the typical student-teacher relationship. Specifically, Plaintiff contends that DVH "made inappropriate comments to, sexual advances upon and/or touching of, the Plaintiff during school hours and upon school grounds." (Compl. ¶12.) Nowhere in the Complaint does Plaintiff state if or when she complained to anyone regarding Vanden Huevel's actions. According to Plaintiff, the Warren County Prosecutor's Office began an investigation of Vanden Huevel sometime prior to December 2006 that failed to result in a charge of statutory sexual abuse, but that nonetheless determined that his contact with Plaintiff exceeded an acceptable student-teacher relationship. Vanden Huevel's employment as a teacher in the District ended in December 2006.[1]

Plaintiff also contends that she suffered from depression throughout her high school career as a direct result of Vanden Huevel's conduct. After the criminal investigation, Plaintiff began to experience severe seizure-like anxiety attacks that ultimately resulted in hospitalization and her withdrawal from Hackettstown High School. Plaintiff was admitted to a few different hospitals beginning February 28, 2007 to treat "panic/anxiety disorder, major depression, borderline personality traits, and superficial cutting," as well as "anorexia with purging," before finally being discharged on May 10, 2007. (Compl. ¶13.) In April 2007, Plaintiff began therapy sessions with her family, in which Vanden Huevel's conduct was addressed.

The District and the Administrators filed the instant motion on June 25, 2010, seeking the dismissal of the Complaint against them on the grounds that Vanden Huevel was a private actor

---

[1] Plaintiff's complaint alleges in Paragraph 12 that Vanden Huevel "was fired as a direct result of his repetitive conduct," and in Paragraph 14 that Vanden Huevel "resigned."

who pursued his own goals in a way that could not have been detected or subject to control by his employer. The Court heard oral argument on February 22, 2011.

## II.     Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. The Supreme Court set forth the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 555 (internal citations omitted). Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ..." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citations omitted).

**III.    Discussion**

    **A.    Section 1983 Claims**

In Counts 8, 11, 14, 17, and 20 of her Complaint, Plaintiff alleges that the District and the Administrators are liable under 42 U.S.C. § 1983 for violating her constitutional rights under color of state law.  Plaintiff sets forth three theories of liability under Section 1983: (1) it was the "custom, policy and practice" of the District and the Administrators not to provide education, instruction, training, or supervision on proper conduct in the classroom to teachers such as Vanden Huevel; (2) the District and the Administrators allowed the inappropriate conduct of a male teacher toward female adolescent students and ratified such conduct as a matter of custom, policy, and practice; and (3) District and the Administrators violated her right to bodily integrity under the substantive due process portion of the Fourteenth Amendment to the United States Constitution.

Governmental entities may be sued under Section 1983 for depriving someone of his or her constitutional rights.  *Marran v. Marran*, 376 F.3d 143, 155 (3d Cir. 2004).  They may only be held liable, however, where the actions of its agents or employees are effected pursuant to some policy, practice, or custom of the entity.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978).

        1.    <u>Failure to Instruct</u>

Plaintiff claims that it was the "custom, policy and practice" of the District and the Administrators not to provide education, instruction, training, or supervision on proper conduct in the classroom to teachers such as Vanden Huevel.  In *City of Canton, Ohio v. Harris*, 489 U.S.

378, 109 S. Ct. 1197 (1989), the Supreme Court explained that "*Monell's* rule that a [governmental entity] is not liable under § 1983 unless a . . . policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees . . . represents a policy for which the [governmental entity] is responsible." 489 U.S. at 389.  Instead,  an entity's failure to train its employees in a relevant respect can result in liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *Id.* at 388-89.  The Court further explained that the failure to train or instruct must reflect "a 'deliberate' or 'conscious' choice by a[n entity]—a 'policy' as defined by our prior cases—[to be held] liable for such a failure under § 1983." *Id.* at 389.

In *Canton*, the Supreme Court stated that a governmental entity can be liable for failure to instruct only when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [entity] can reasonably be said to have been deliberately indifferent to the need." 489 U.S. at 390.  As an example, the Court suggested that city policymakers must train its police force in the constitutional limitations on the use of deadly force because they know that officers will arrest fleeing felons and they have armed the officers to accomplish that task. *Id.* at 390 n.10.  In this case, the need for training is not so obvious.  Providing no guidance to a teacher as to what constitutes sexual abuse, as Plaintiff has alleged, cannot fairly be characterized as likely to result in sexual abuse.  In fact, "[t]he offending conduct here . . . is the sort of behavior that is so obviously wrong and contrary to right that an ordinary person could recognize it as inappropriate even without any additional training." *Young v. Pleasant Valley School Dist.*, 2010 WL 55711, *10 (M.D. Pa. 2010); *see Kline v. Mansfield*, 255 Fed. Appx. 624, 639 (3d Cir. 2007) (finding

that "because not committing the crime of sexually abusing a child is obvious, the failure of [the school] to train its employees to spot signs of sexual abuse . . . was not deliberately indifferent."). In this case, then, "failing to provide more training . . . would not obviously lead to a constitutional violation and does not constitute deliberate indifference." *Id.* Therefore, Plaintiff's theory that the District and the Administrators are liable under Section 1983 for their failure to instruct falls short.

        2.        <u>Deliberate Indifference</u>

Plaintiff also claims that the District and the Administrators allowed the inappropriate conduct of a male teacher toward female adolescent students and ratified such conduct as a matter of custom, policy, and practice. As mentioned before, to state a claim against defendants for a custom, policy or practice, the conduct of the District and the Administrators must amount to deliberate indifference. "[A] successful deliberate indifference claim requires showing that the defendant knew of the risk to the plaintiff before the plaintiff's injury occurred." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 137 (3d Cir. 2001). In *Johnson v. Elm Lake School District*, 283 F.3d 138 (3d Cir. 2002), the Third Circuit faced a similar case where the victim of alleged abuse by a teacher sought relief under Section 1983 for the school administration's "policy or custom." In that case, the court noted that the complainant "presented no credible evidence demonstrating that school officials knew of the alleged risk of sexual abuse posed by [the teacher]" before the injury occurred, and "therefore . . . failed to establish . . . that her injuries were caused by a 'policy or custom' of the Administration." *Johnson*, 283 F.3d at 144 n.1 (citing *Beers*-Capitol, 256 F.3d at 137).

Plaintiff's claim of deliberate indifference must fail in this case because nowhere in her Complaint does she state that the District and the Administrators knew of the alleged risk of

sexual abuse posed by Vanden Huevel at any time before her injuries were sustained. In her opposition to their motion to dismiss, Plaintiff alleges, for the first time, that the District and the Administrators were aware that Vanden Huevel was spending time alone with Plaintiff before classes and during lunch. (Pl. Opp. 9.) Even if it were proper, when deciding a motion to dismiss under Federal Rule of Procedure 12(b)(6), to consider facts that are first alleged in the opposition, these allegations fail to state that the District and the Administrators knew of any alleged risk of abuse before Plaintiff suffered any injuries.[2]

Plaintiff also claims in her opposition for the first time, again impermissibly, that "there existed reports and incidents of [Vanden Huevel's] having had inappropriate contact with female students on prior occasions." (Pl. Opp. 19.) Again, even if it were proper to consider facts that are first alleged in the opposition, these allegations merely constitute unsubstantiated rumors, s*ee Johnson*, 283 F.3d at 144 n.1 ("In the absence of any direct complaints made to school officials, the mere floating around of unsubstantiated rumors regarding a particular employee—particularly in the high school setting, which is notoriously rife with adolescent gossip—does not constitute the kind of notice for which a school district can be held liable under *Monell's* 'policy or custom' requirement."), and Plaintiff does not allege that the District and the Administrators were even aware of them. Therefore Plaintiff's theory that the District and the Administrators are liable under Section 1983 for ratifying Vanden Huevel's conduct as a matter of "policy or custom" fails because the conduct of the District and the Administrators did not rise to the level of "deliberate indifference."

---

[2] The Court notes that it is, in fact, improper to use an opposition to a motion to dismiss to amend a complaint. *See Pennsylvania ex rel. Zimmerman v. PepsiCo*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

      3.    <u>State-Created Danger</u>

Plaintiff claims that the District and the Administrators violated her right to bodily integrity under the substantive due process portion of the Fourteenth Amendment to the United States Constitution under a theory of state-created danger. "As a general proposition, a state's failure to protect an individual against private violence does not constitute a violation of due process." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 202, 109 S. Ct. 998, 1007 (1989)). "Nevertheless, persons acting [under] color of state law have a duty to protect against violence by a third party if (1) a 'special relationship' exists between the individual harmed and the state or (2) there is a 'state-created danger.'" *Ward v. Barnes*, 545 F. Supp. 2d 400, 423 (D.N.J. 2008) (citing *Nicini*, 212 F.3d at 807-08). As a matter of law, a special relationship does not exist between public schools and students. *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1372-73 (3d Cir. 1992). Therefore, Plaintiff's Complaint may be interpreted to allege that her harm resulted from the District's creation of a danger to her.

Third Circuit case law establishes the following essential elements of a meritorious "state-created danger" claim: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006). The Third Circuit also employs a

"deliberate indifference" standard for purposes of determining whether liability attaches under the state-created danger theory. *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 908 (3d Cir. 1997).

Plaintiff's injuries were not foreseeable or the fairly direct result of the District and the Administrators' actions. "Under Third Circuit jurisprudence, a harm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual or class of individuals such that the actor is on notice that his or her act or failure to act significantly enhances that risk of harm." *Gremo v. Karlin*, 363 F. Supp. 2d 771, 784-85 (E.D. Pa. 2005). As explained above, nowhere in her Complaint does Plaintiff state that the District and the Administrators knew of the alleged risk of sexual abuse posed by Vanden Huevel. Therefore, the District and the Administrators could not have been on notice that their act or failure to act significantly enhanced the risk of sexual abuse. Moreover, Plaintiff's injuries were not a fairly direct result of the District and the Administrators' actions. Plaintiff alleges in her opposition that the District and the Administrators failed to provide training to Vanden Huevel on the "inappropriateness of spending a substantial amount of time alone with female students," and that they failed to train other teachers report such "inappropriateness." (Pl. Opp. 13.) Such an action, however, is too attenuated to have caused Vanden Huevel's alleged abuse of Plaintiff. As the Court has already noted, "[t]he offending conduct here . . . is the sort of behavior that is so obviously wrong and contrary to right that an ordinary person could recognize it as inappropriate even without any additional training." *Young*, 2010 WL at *10. As such, Plaintiff can prove no set of facts which will provide the direct causal connection between Vanden Huevel's conduct toward Plaintiff and the District and the Administrators' allegedly improper failure to train.

The District and the Administrators did not act with a degree of culpability that shocks the conscience. This second prong of the state-created danger doctrine has also been interpreted to require that "the state actor acted with willful disregard for or deliberate indifference to plaintiff's safety." *Morse*, 132 F.3d at 910. Plaintiff states in her opposition that the District and the Administrators' "allowing Vanden Huevel to have continuous, unfettered access to Plaintiff shocks the conscience given that Vanden Huevel had engaged in similarly inappropriate conduct with other female students." (Pl. Opp. 14.) Plaintiff, however, has not pled in her Complaint that the District and the Administrators actually knew or even reasonably could have known that Vanden Huevel might pose a danger to Plaintiff. Without such knowledge, a school district's allowing a teacher access to his students neither shocks the conscience nor evinces a willful disregard for or deliberate indifference to their safety; rather, it is an expected and obvious requirement so that the teacher may actually teach his students.

The state-created danger doctrine also requires a relationship between Plaintiff and the District and the Administrators such that Plaintiff was a member of a discrete class of persons, as opposed to the public in general, who were foreseeable victims of the resulting harm. Plaintiff contends that all female students at Hackettstown High School comprised a sufficiently discrete class of persons who could have been foreseeable victims of sexual harassment and abuse by a teacher, as was allowed by the District and the Administrators. If the actions of the District and the Administrators had caused Vanden Huevel to inflict such harm against Plaintiff, then a case could be made for her belonging to a discrete class of foreseeable victims. But the Court need not decide this issue here because it holds that Plaintiff cannot satisfy the other three prongs of the state-created danger test. *See Morse*, 132 F.3d at 914 (noting that the court need not decide the third prong of the state-created danger test because the other three prongs were satisfied).

The last prong of the state-created danger test involves determining whether the District and the Administrators affirmatively used their authority in a way that created a danger to Plaintiff or that rendered her more vulnerable to danger than had they not acted at all. The Third Circuit has emphasized that "under the fourth element of a state-created danger claim, 'liability under the state-created danger theory is predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger.'" *Bright*, 443 F.3d at 282 (quoting *D.R.*, 972 F.2d at 1374) (emphasis in *Bright*). Thus, "[i]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Id.* In *Bright*, the Third Circuit elaborated, cautioning that "an affirmative act, while necessary, is not sufficient. The test also requires a direct causal relationship between the affirmative act and foreseeable harm to the plaintiff." 443 F.3d at 283.

In the present case, Plaintiff states in her opposition that the District and the Administrators' affirmative acts include "(1) placing Vanden Huevel in a classroom with female students when there existed reports and incidents of him having had inappropriate contact with female students on prior occasions; and (2) allowing Plaintiff to skip her placement during the lunch period and spend the entire lunch period in Vanden Huevel's classroom." (Pl. Opp. 19.) As the Third Circuit noted in *Bright*, "the line between action and inaction may not always be clear" when it comes to determining an affirmative act. 443 F.3d at 282. Nevertheless, without deciding whether the alleged conduct by the District and the Administrators rose to the level of "affirmative acts," the Court finds that there was no direct causal relationship between the conduct of the District and the Administrators and foreseeable harm.

The instant case most closely resembles *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364 (3d Cir. 1992) (*en banc*), *cert. denied*, 506 U.S. 1079, 113 S. Ct. 1045

11

(1993), where two students alleged that their high school's failure to adequately supervise a class or investigate misconduct created the dangerous situation where they were sexually molested by fellow students in the bathroom and darkroom of the classroom.  The Third Circuit found that because the harm that resulted was not foreseeable, there was no direct causal relationship between the conduct of the high school and the injury suffered by the plaintiffs:

> The school defendants' "acts" in assigning student teacher Peters to the graphic a[r]ts class and failing to supervise her more closely . . . may have created a recognizable risk that plaintiffs would receive little education in that class, and perhaps, physical injury due to the roughhousing.  Plaintiffs did not suffer harm, however, from that kind of foreseeable risk. . . .  Plaintiffs' harm came about solely through the acts of private persons without the level of intermingling of state conduct with private violence that supported liability . . . .

*D.R.*, 972 F.2d at 1374-75 (internal citations omitted).  Interpreting *D.R.* in a later case, the Third Circuit thus concluded that "the dispositive factor appears to be whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable." *Morse*, 132 F.3d at 915. Here, Plaintiff's Complaint fails to allege that the District and the Administrators were aware of any risk that Vanden Huevel posed to Plaintiff.  Therefore, placing her in a classroom with Vanden Huevel or allowing her to have lunch with him carried the same level of risk as doing so with any other teacher, and did not in any way place her in a dangerous position that was foreseeable.  As such, and viewed in combination with her failure to establish other prongs of the test, Plaintiff's fails to state a claim under the state-created danger doctrine.

Because all three of Plaintiff's theories of liability against the District and the Administrators under Section 1983 fail, the Court must dismiss Counts 8, 11, 14, 17, and 20 of the Complaint for failure to state a claim.

### B. Law Against Discrimination Claims

In Counts 9, 12, 15, and 18 of her Complaint, Plaintiff alleges that the Administrators are liable for violations of New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* (the "LAD"). Plaintiff acknowledges in her opposition to the instant motion that the law is clear that only "employers" may be liable for discrimination under the LAD, pursuant to *Tarr v. Ciasulli*, 181 N.J. 70, 853 A.2d 921 (2004). (Pl. Opp. 20.) Nonetheless, Plaintiff contends that because she provided notice in her Complaint that she was filing suit under all sections of the LAD, her Complaint sufficiently pleads that the Administrators are liable for "aiding and abetting" discrimination under N.J.S.A. 10:5-12e.

N.J.S.A. 10:5-12e states that it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the LAD]." The New Jersey Supreme Court has interpreted the statute, holding that "in order to hold an employee liable as an aider or abettor, a plaintiff must show that (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Tarr*, 181 N.J. at 84 (citations and internal quotation marks omitted).

Plaintiff alleges in her Complaint that the Administrators "trained and supervised" Vanden Huevel and, as a result of their "acts, conduct and/or omissions in the performance of [their] supervision" of Vanden Huevel, Plaintiff suffered discrimination based on her sex. (Compl. counts 9, 12, 15, and 18.) Nowhere in her Complaint does Plaintiff allege that the Administrators were generally aware of their role as part of an overall illegal or tortious activity, nor does she allege that they knowingly and substantially assisted in Vanden Huevel's conduct.

13

As a result, accepting the facts alleged in the Complaint as true, Plaintiff has provided no plausible claim to relief under the LAD. Plaintiff also demands that she be given "the opportunity to engage in discovery." (Pl. Opp. 20.) As noted by the Supreme Court in *Iqbal*, however, "the question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process." 129 S. Ct. at 1953 (citing *Twombly*, 550 U.S. at 559). Therefore, regardless of Plaintiff's demand for discovery, she has failed to state a claim for violating the "aiding and abetting" section of the LAD and her LAD claims against the Administrators—Counts 9, 12, 15, and 18 of the Complaint—must be dismissed.

### C. Title IX Claims

In Counts 7, 10, 13, 16, and 19 of her Complaint, Plaintiff alleges that Vanden Huevel and the Administrators are liable for violations of Title IX, 20 U.S.C. § 1681 *et seq*. It is well settled law, however, that Title IX does not provide a cause of action against individual state actors. *Fitzgerald v. Barnstable Sch. Comm.*, 129 S. Ct. 788, 796 (2009) ("Title IX reaches institutions and programs that receive federal funds . . . which may include nonpublic institutions . . . but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals . . . ." (internal citations omitted)). Accordingly, Plaintiff's Title IX claims fail to state an actionable claim as a matter of law. Counts 7, 10, 13, 16, and 19 of Plaintiff's Complaint must be dismissed.

### D. *Respondeat Superior*

In Count 21 of her Complaint, Plaintiff alleges that the District is liable for any torts committed by Vanden Huevel under a theory of *respondeat superior*. Specifically, Plaintiff claims:

> Based upon the theory of Respondeat Superior/Agency, Defendant, [the District], is legally and directly responsible for the careless, negligent, grossly negligent, reckless and/or intentional acts of its agents, servants, workers, employees and/or joint venturers including Defendant, Vanden Huevel, from September 1, 2004 through June of 2007, as set forth above in Counts II, III, IV & V.
>
> The extensive injuries that the Plaintiff suffered as a result of the above described occurrences were directly, proximately, legally and substantially caused by the carelessness, negligence, gross negligence, recklessness and/or intentional acts, conduct and/or omissions of Defendant, Vanden Huevel, as set forth above.

(Compl. ¶¶ 160-61.) In her opposition, Plaintiff contends that Count 21 includes a claim under *respondeat superior* and can also "be read fairly to encompass a claim of negligent supervision by the [District] over Vanden Huevel." (Pl. Opp. 23.)

Under the New Jersey Tort Claims Act, "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. 59:2-10. In Counts 2, 3, and 4 of her Complaint, Plaintiff asserts claims for harassment, assault, and intentional infliction of emotional distress, respectively. For each of these claims, Plaintiff acknowledges the conduct involved as "knowing, intentional, purposeful and willful." (Compl. ¶¶ 34, 38, 42.) Therefore, the Court finds that these acts require, at least, "willful misconduct." *See Ward*, 545 F. Supp. 2d at 420-21 (finding battery and intentional infliction of emotional distress are acts that require "actual malicious or willful misconduct"); *see also Stroby v. Egg Harbor Twp.*, 2010 WL 5036982, *5 (D.N.J. 2010) ("Willful misconduct is the commission of a forbidden act with actual knowledge that the act is forbidden."). Therefore, Count 21 fails to state a claim insofar as it asserts a theory of *respondeat superior* for Vanden Huevel's alleged harassment, assault, or intentional infliction of emotional distress.

Plaintiff's *respondeat superior* theory also falls short for Vanden Huevel's alleged negligent infliction of emotional distress under Count 5. The New Jersey Tort Claims Act waives the state of New Jersey's sovereign immunity such that a public entity may be "liable for

injury proximately caused by an act or omission of a public employee within the scope of his employment." N.J.S.A. 59:2-2a. The New Jersey Supreme Court has adopted the standard for vicarious liability from the Restatement (Second) of Agency. *O'Toole v. Carr*, 175 N.J. 421, 425, 815 A.2d 471, 474 (2003). The Restatement provides that conduct is within the scope of an employee's employment when:

> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master, and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

Restatement (Second) of Agency § 228.[3] According to the Complaint, Vanden Huevel's alleged conduct consisted of "inappropriate comments to, sexual advances upon and/or touchings of, the Plaintiff." (Compl. ¶12.) This conduct was certainly not of the kind Vanden Huevel, as a teacher, was employed to perform, nor was it actuated in any part in order to serve the District. Furthermore, intentional force used by any teacher in a sexual or inappropriate manner is unexpectable by the District. Therefore, the Court finds that Vanden Huevel's "inappropriate comments to, sexual advances upon and/or touchings of, the Plaintiff" were not within the scope of his employment such that the District may not be held liable for his conduct. *See also Cosgrove v. Lawrence*, 522 A.2d 483 (N.J. Super. Ct. App. Div. 1987) (finding that a therapist's sexual relations with his client were outside the scope of employment because they violated ethics rules, were not an accepted therapy technique, and were prohibited by his employers).

---

[3] The Court notes that since *O'Toole*, the Restatement (Second) of Agency has been superseded by the Restatement (Third) of Agency, which states: "An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." § 7.07. The Court finds that under this formulation, Vanden Huevel's conduct also falls outside the scope of his employment.

16

Accordingly, Plaintiff fails to state a claim for negligent infliction of emotional distress by the District under the theory of *respondeat superior*.

Finally, Plaintiff contends in her opposition to the instant motion that Count 21 "can be read fairly to encompass a claim of negligent supervision by the [District] over Vanden Huevel." (Pl. Opp. 23.) A claim for negligent supervision is an independent claim for direct liability, rather than one for vicarious liability under a theory of *respondeat superior*. "Three elements are essential for the existence of a cause of action in negligence: (1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) an injury to plaintiff proximately caused by defendant's breach." *Endre v. Arnold*, 692 A.2d 97, 100 (N.J. Super. Ct. App. Div. 1997), *certif. denied*, 150 N.J. 27, 695 A.2d 670 (1997). Nowhere in Count 21 does Plaintiff describe a duty owed to her by the District, nor does she provide facts detailing a breach of such a duty. Furthermore, given the language of Count 21, the Court cannot glean from it a direct liability claim of negligence against the District. In the Complaint, Plaintiff provides a heading for Count 21 that reads, "COUNT XXI (v. School District – Respondeat Superior)," suggesting that the only claim in Count 21 is under a theory of *respondeat superior*. Plaintiff describes Vanden Huevel as the District's agent, (Pl. Opp. ¶158), claims that the District was responsible for his supervision, (Pl. Opp. ¶159), and concludes that the District is responsible for Vanden Huevel's acts, (Pl. Opp. ¶160), and for the injuries caused by those acts, (Pl. Opp. ¶161-62). Plaintiff does not allege that the District was negligent. Therefore, Plaintiff fails to state a claim for negligence and Count 21 must be dismissed.

**IV. Conclusion**

The Court concludes that Plaintiff has failed to state a claim under Counts 7 through 21. Those Counts in the Complaint are dismissed. Accordingly, the District and the Administrators'

motion to dismiss is granted and the District and the Administrators are dismissed from this case.

An appropriate order shall issue.

/s/ JOEL A. PISANO<br>
United States District Judge

Dated: March 28, 2011